TACOPINA SEIGEL & TURANO, P.C.
60 Park Place, Suite 703-704
Newark, N.J. 07102
(212) 227-8877

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------------------------X
JEF Sr. and DLF, as parents/guardians for minor JEF Jr.,
JEF Jr, a minor, MD and ID, as parents/guardians for
minor MED, MED, a minor, ARO and KRS, as
parents/guardians for minor VO, and VO, a minor,

Case No.

*Plaintiffs*,

**COMPLAINT**

– against –

JURY TRIAL DEMANDED

LONG BRANCH PUBLIC SCHOOLS, LONG
BRANCH BOARD OF EDUCATION, THE
GREGORY SCHOOL, KEVIN GARIFINE, and
ROBERT S. REGO,

*Defendants*.
-------------------------------------------------------------------X

Plaintiffs JEF Sr., DLF, JEF Jr., MD, ID, MED, ARO, KRS and VO (collectively

"Plaintiffs"; JEF Jr., MED and VO collectively the "Minor Plaintiffs"), by their attorneys, Tacopina,

Seigel & Turano, P.C., complaining of the defendants named herein (collectively "Defendants"),

alleges as follows:

## INTRODUCTION

1.       This action arises from the outrageous and shocking abuse of four second grade

children (age seven at the time) – three of which are Plaintiffs herein – at the Gregory Elementary

School in Long Branch, New Jersey, at the hands of two school custodians in a school bathroom.

The Custodians  demanded that the students "play a game" and then forcibly tied and bound these

children's hands together with tape. To make matters worse, the Custodians demanded that the students "be quiet" and then gagged two of the students' mouths shut with tape.

2. Incredibly, the abuse did not end there. To satisfy their sick desire, the Custodians pushed all four children against the wall and proceeded to take pictures of them with their cell phone(s).

3. To date, upon information and belief, these incredibly offensive pictures have never been recovered by law enforcement. Moreover, school officials have sought to downplay the significance of this abuse by making statements to the media that this incident was merely "a joke gone bad." Such statements only have increased the children's severe emotional distress because it has created an atmosphere in their community that these children and their parents are creating a proverbial "mountain out of a molehill."

4. As a result of this abuse, Plaintiffs-minor children have suffered severe emotional distress, including, *inter alia*, post-traumatic stress.

## JURISDICTION

5. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(3-4) and 42 U.S.C. § 1981 and 1983, as to those claims arising under the laws of the United States, and jurisdiction as to all other claims under the principles of pendent and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6. Venue lies in the District pursuant to 28 U.S.C. § 1391(b)(1) because (a) upon information and belief, all parties reside in the District of New Jersey, and (b) all of the events or omissions giving rise to Plaintiffs' claims occurred in said District.

## PARTIES

7.      Plaintiffs are individuals all residing in the District of New Jersey.

8.      Plaintiffs JEF Sr. and DF are the biological parents and legal guardians of minor Plaintiff JEF Jr., who is presently eight years old.

9.      Plaintiffs MD and ID are the biological parents and legal guardians of minor Plaintiff MED, who is presently eight years old.

10.     ARO and KRS are the biological parents and legal guardians of minor Plaintiff VO, who is presently eight years old.

11.     Defendant LONG BRANCH PUBLIC SCHOOLS ("LBPS") is a public school district existing and organized under the laws of the State of New Jersey and located in the City of Long Branch, New Jersey.

12.     Defendant LONG BRANCH BOARD OF EDUCATION ("LBBE") is a board of education existing and organized under the laws of the State of New Jersey and located in the City of Long Branch, New Jersey.

13.     Defendant THE GREGORY SCHOOL ("TGS") is a public school existing and organized under the laws of the State of New Jersey and located in the City of Long Branch, New Jersey.  At all times relevant herein, JEF Jr., MED and VO were students at TGS.  LBS, LBBE and TGS are collectively referred to herein as the Municipal Defendants.

14.     Upon information and belief, Defendants KEVIN GARIFINE ("Garifine") and ROBERT S. REGO ("Rego") are individuals residing in the District of New Jersey.

## NOTICE OF CLAIM PROCEEDINGS

15.     Pursuant to N.J.S.A. § 59:8-1 *et seq.*, on or about May 24, 2012, and within the time

3

prescribed by law, Plaintiffs served and filed, by Certified Mail Return Receipt Requested, a Notice

of Claim upon the Municipal Defendants, through the Department of the Treasury, Bureau of Risk

Management, Tort and Contract Unit, and at such Defendants' business address, stating, among other

things, the time when and place where the injuries and damages were sustained and incurred by

Plaintiffs, together with Plaintiffs' demands for adjustment thereof.  Thereafter, the Municipal

Defendants refused or neglected for more than six months, and up to the commencement of this

action, to make any adjustment or payment thereof, and thereafter, and within the time provided by

law, this action was commenced.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

16.     On March 1, 2012 at approximately 9:30 am, Plaintiff VO was in a bathroom at TGS

with another student from his class.

17.     At that time, custodians Garifine and Rego (collectively the "Custodians"),

employees of the Municipal Defendants, were in such bathroom purportedly doing maintenance or

repairs.

18.     The bathroom was not locked, marked, or supervised by any school teaching staff.

The Municipal Defendants negligently allowed the Custodians to be in the students' bathroom at the

same time as dozens of elementary students frequented such bathroom.

19.     The Municipal Defendants intentionally had no rule, regulation, policy, custom or

practice prohibiting the students' use of bathrooms while such bathrooms were being repaired or

maintained by Custodians.

20.     For example, the Municipal Defendants could have easily instituted a rule, regulation,

policy, custom or practice preventing students from using such bathrooms while custodians were

4

performing work in such bathrooms.

21.    Instead, the Municipal Defendants had a permanent and well-settled policy of allowing students to use bathrooms while custodians did work therein.

22.    After VO and another student entered the bathroom, the Custodians demanded that VO and the other student "play a game" and then forcibly and violently tied these students' hands together with tape.

23.    The Custodians also demanded that the students "be quiet" and then forcibly and violently gagged the students' mouths shut with tape.

24.    Shortly thereafter, JEF Jr. and MED entered the bathroom and the Custodians demanded that they "come here" and "be quiet."

25.    The Custodians then forcibly and violently tied these students' hands together with tape.

26.    The Custodians then forcibly and violently pushed all four students against the wall and proceeded to take pictures of them with the cameras on their cell phone(s).

27.    Such abusive conduct was not consensual in any manner and was an incredibly offensive touching and battery.

28.    This abuse also constituted corporal punishment as it was inflicted by school employees due to their demented belief that the Minor Plaintiffs had done something for which they needed to be punished.

29.    Based upon the facts set forth herein, each of these students was and is an "abused child" as defined under N.J.S.A. § 9:6-8.9 and the policies and regulations of the Municipal Defendants.

30.     However, as described herein, the Municipal Defendants and their employees failed to comply with state law and the policies and regulations of the Municipal Defendants concerning an "abused child."

31.     The Municipal Defendants also failed to train their employees named herein to adequately comply with such laws, policies and regulations.

32.     The right to be free of state-occasioned damage to a person's bodily integrity is protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution and provisions of the Constitution of the State of New Jersey. By such abusive acts, the Custodians, acting under the color of state law, violently violated the bodily integrity of these students.

33.     Accordingly,  this misconduct (a) was committed by persons acting under the color of state law; and (b) deprived these students of rights, privileges or immunities secured by the United States Constitution and/or laws of the United States, as well as those secured by the New Jersey State Constitution and/or laws of New Jersey.

34.     This egregious official misconduct, and that detailed below concerning the Municipal Defendants' (and their employees') intentional and deliberate failure to confiscate the above-described photographs, manifests a deliberate indifference to the students' constitutional rights. Indeed, such official misconduct constitutes  arbitrary and capricious government action and is so egregious and outrageous, that it shocks the contemporary conscience.

35.     The Custodians acted in such a manner to satisfy their malicious and sadistic desires in taking pleasure from  inflicting pain and emotional abuse upon these children.  Such conduct was extreme and outrageous.

36.     All four children desperately wanted and attempted to leave the bathroom, but could not do so due to the Custodians tying them up and intimidating them. The Custodians eventually let the children leave the bathroom only after they satisfied their sadistic desires, and possessed photographs of such abuse for later gratification, use and/or distribution.

37.     During this incident, VO, JEF Jr. and MED feared for their physical safety and well-being and were severely emotionally traumatized by such conduct.

38.     These children were and are also severely emotionally traumatized by the fact that such offensive and inappropriate pictures of them exist and have not been destroyed or turned over to the proper authorities – for all they know, such pictures may have been posted on the internet and/or e-mailed to multiple third parties.

39.     Furthermore, the emotional well-being of these children was in immediate danger, because these abusive pictures could have been e-mailed (if not already), forwarded and/or placed on the internet by the Custodians at any time.

40.     Due to the fact that these inappropriate and offensive pictures of these young children have yet to be confiscated by the Municipal Defendants or law enforcement, and the Municipal Defendants knew of these photographs, there was an ongoing overt threat to these children.

41.     Despite such overt threat, the Municipal Defendants failed to isolate and contain those individuals who created and continued to cause the overt threat, namely the Custodians.

42.     Rather, as described below, the Municipal Defendants, with knowledge of the incident which occurred in the school's bathroom, directed that the Custodians go home and/or leave the school premises, without securing the offensive and inappropriate photographs of the children, which caused and promoted the continuation of this overt threat.

7

43. The Custodians committed such offensive and abusive acts within the scope of their employment and under color of state law because their access to the school's bathroom, the children and the tape was due to their positions as municipal employees.

44. In addition, the tape used to bind and gag the children was owned by the Municipal Defendants and the Municipal Defendants provided such tape to the Custodians.

45. Moreover, the Municipal Defendants also directed the Custodians to perform work in such bathroom during that time, and the Custodians used their position of power and influence as school employees to control, intimidate and abuse these children and take custody of them inside the Municipal Defendants' bathroom.

46. The Municipal Defendants, while having rules prohibiting the use of cell phones for certain calls, intentionally had no rule, regulation, policy, custom or practice regarding the employees' use of cell phone cameras and employees taking pictures of students on school premises with cell phones.

47. For example, the Municipal Defendants could have easily instituted a rule, regulation, policy, custom or practice barring such use. This is especially so, when, at least for the last five years, it is common knowledge of school administrators that students often are emotionally traumatized by the use of cell phones to take inappropriate pictures of them, which are later e-mailed, forwarded and/or posted to the internet.

48. Hence, the Municipal Defendants had a custom or policy not to adequately train or supervise its employees with regard to the taking of cell phone pictures of students.

49. The Municipal Defendants had a custom or policy not to adequately train or supervise its custodians with regard to interacting with students, and interacting with students in bathrooms.

50.     Furthermore, the Municipal Defendants had a permanent and well-settled policy of allowing employees to take pictures of students with cell phones.

51.     Due to this blatant lack of control regarding the use of cell phones to take pictures of students, there was, upon information and belief, a pattern of inappropriate cell phone photography of students that was known to the Municipal Defendants.

52.     Moreover, a single occurrence of taking an inappropriate cell phone picture of students was a highly predictable consequence due to these failures by the Municipal Defendants.

53.     Therefore, the policies and customs of the Municipal Defendants promoted the use of taking pictures of the students with cell phones.

54.     The students' injuries as described herein would have been avoided if the offending employees described herein had been trained under a program that was not deficient in this identified respect.  Indeed, these failures by the Municipal Defendants (a) were the moving forces behind the constitutional violations described herein; and (b) amount to a deliberate indifference to the rights of the students at the school.

55.     After the children were finally released from the bathroom, they returned to their homerooms and immediately reported to their homeroom teachers (Jennifer Knaup and Alisa Aquino) that they had been, *inter alia*, tied up and photographed by the Custodians in the bathroom.

56.     Both teachers simply ignored the children's statements. Indeed, Ms. Knaup responded "yeah right," which was clearly negligent and violated the written Bylaws, Policies & Administrative Regulations of the Municipal Defendants ("Policy" or "Policies"). Moreover, neither teacher reported the incident to any school or law enforcement officials, which was clearly negligent and violated the Policies.

9

57.     A short while later, JEF Jr. and MED reported the abuse to their art teacher, Margaret Marzullo.  However, Ms. Marzullo delayed in informing school authorities and failed to notify law enforcement, which was clearly negligent and violated the Policies.

58.     Furthermore, the Municipal Defendants and their employees failed to even notify the school nurse, Diane Anthony.  Ms. Anthony learned of the incident from JEF Sr.  In fact, she admitted to JEF Sr. that she "had no idea" what had happened to these four students.

59.     Thereafter, at approximately 1:00 pm, Principal Elford Rawls-Dill ("Principal Rawls") of the Gregory School called JEF Sr. and explained to him that Custodians from the school tied up his son and three other 7-year-old boys that morning.

60.     Principal Rawls also stated that the Custodians "gagged" the four students. Principal Rawls then stated that JEF Jr. was "okay" and requested that JEF Sr. come to the school. At this point, Principal Rawls still had failed to alert law enforcement, which was clearly negligent and violated the Policies and New Jersey law.

61.     JEF Sr. immediately left for the school and arrived minutes later.  JEF Sr. spoke to Principal Rawls in his office, where Principal Rawls admitted that (a) the four students were in the second floor bathroom and "were all tied up [by the Custodians] with crossed hands, and two of the boys were gagged"; (b)  the Custodians told the students to "come here" and "be quiet"; (c) the Custodians pushed the students against the wall together; and (d) the Custodians took pictures of the students with a cell phone(s).

62.     However, even though Principal Rawls knew of these facts and was aware that violent acts had been committed against these 7-year-old children, he still failed to alert law enforcement, which was clearly negligent and violated the Policies and New Jersey law.

10

63.    JEF Sr. then asked Principal Rawls to immediately call the police.  Principal Rawls rejected this request by saying that the police would not be called because the school was "doing its own investigation."  JEF Sr. then inquired as to whether Principal Rawls had spoken to all four students.  Principal Rawls replied that he had indeed spoken to them, and that the students "all told the same story… that they were tied up, gagged, and that pictures were taken of them."

64.    JEF Sr. then asked as to the whereabouts of the parents of the other three students. Principal Rawls replied that they were "working on" contacting those parents.

65.    JEF Sr. demanded that Principal Rawls contact the police immediately.  While JEF Sr. subsequently learned that the school eventually contacted the police later that day, upon information and belief, the school only did so because JEF Sr. was so adamant that law enforcement be notified immediately.

66.    Such conduct by the Municipal Defendants and their employees was clearly negligent and violated the Policies and New Jersey law.

67.    JEF Sr. then walked out of Principal Rawls' office and spoke to three of the four students who were abused by the Custodians.  All three confirmed the abuse as described above.

68.    Thereafter, Principal Rawls exited his office and JEF Sr. asked him again, "Did you call the cops? Did you call the parents?" Principal Rawls replied, "We are trying to do the best we can." However, the Municipal Defendants still failed to contact law enforcement.

69.    JEF Sr. then took his son to Ms. Knaup's classroom and asked to talk to her for a moment in the hallway.

11

70.     JEF Sr. asked her, "What happened this morning in the bathroom?" Ms. Knaup admitted that "[JEF Jr.] and [MED] told me that they were tied up in the bathroom and I thought nothing of it."

71.     JEF Sr. then asked, "Do you know what happened in the bathroom?" Ms. Knaup replied, "No."

72.     Ms. Knaup's conduct in this regard was clearly negligent and violated the Policies and New Jersey Law. Principal Rawls later admitted to JEF Sr. that Ms. Knaup never reported the incident to school officials and that it was Ms. Marzullo, JEF Jr.'s and MED's art teacher, who reported it to school officials later in the day.

73.     Thereafter, law enforcement finally arrived at the school. Long Branch Policeman "Eric," Lead Detective Michael Decker, and another Detective, Charles Simonelli, arrived at the school. Upon information and belief, Detective Simonelli and the Custodians grew up together in the Woodrow Wilson Apartment Complex in Long Branch and are still friends to this day.

74.     After law enforcement arrived, JEF Sr. asked Principal Rawls about the whereabouts of the Custodians. Principal Rawls responded, "We sent them home earlier."

75.     Principal Rawls also stated that it was "school policy" to send them home. Contrary to Principal Rawls' false assertion, such conduct clearly violated the Policies and was clearly negligent.

76.     Indeed, the Municipal Defendants sent the Custodians home before alerting any law enforcement agency, any child-protection agency or any parent of the four students. Due to such negligence and violations of the Policies and New Jersey Law, the Custodians were able to flee law

enforcement and abscond with the offensive and inappropriate pictures they took of the students that depicted the abuse inflicted.  Incredibly, one of the Custodians, Garifine, fled to Florida.

77.     Sometime after the Municipal Defendants sent the Custodians home, parents of the other abused students arrived.

78.     Later that day at approximately 4:00 pm, JEF Sr. met with Superintendent Michael Salvatore at the Superintendent's office.  During that meeting, Superintendent Salvatore admitted to JEF Sr. that there was no school "policy" that stated that the Custodians should be sent home.

79.     Shockingly, Superintendent Salvatore admitted that he directed Principal Rawls to send the Custodians home after Superintendent Salvatore spoke to his lawyer. Due to such negligence and violations of the Policies, the Custodians were able to flee law enforcement and abscond with the offensive and inappropriate pictures of the students that depicted the abuse.

80.     To date, upon information and belief, these incredibly offensive pictures have never been recovered by law enforcement.

81.     To make matters worse, Superintendent Salvatore has sought to downplay the significance of this abuse by making statements to the media that this incident was merely a "a joke gone bad."

82.     Such statements only have increased the severe emotional trauma of these students because it has created an atmosphere in their community that these students and their parents are creating a proverbial "mountain out of a molehill."

83.     The above-described intentional and negligent conduct by the Custodians, the Municipal Defendants and the teachers violated, *inter alia*, the following Policies:

13

No. 3211 (CODE OF ETHICS): Employees of the Municipal Defendants "[s]hall not intentionally expose the pupil to embarrassment or disparagement."

No. 3280 (LIABILITY FOR PUPIL WELFARE): Employees of the Municipal Defendants "may restrain a pupil only with the reasonable amount of force necessary to: a. Quell a disturbance, b. Obtain possession of weapons or dangerous objects, c. Offer self defense, or d. Protect persons or property. *** A teaching staff member must report immediately to the Building Principal any accident or safety hazard the member detects."

No. 3281 (INAPPROPRIATE STAFF CONDUCT): Employees of the Municipal Defendants "shall not engage in inappropriate conduct toward or with pupils. *** 'Inappropriate conduct' includes, but is not limited to, ... inappropriate touching by the staff member to a pupil [and] corporal punishment .... *** In addition, school personnel having reasonable cause to believe a pupil has been subjected to child abuse or neglect or acts of child abuse or neglect as defined under N.J.S.A. 9:6-8.10[1] are required to immediately report to the Division of Youth and Family Services in accordance with N.J.A.C. 6A:16-10.1 et seq. and inform the Building Principal or immediate supervisor after making such report." *See also* No. 4281 (INAPPROPRIATE STAFF CONDUCT) (stating same).

No. 7430 (SCHOOL SAFETY): "In all cases where the nature of an injury appears in any way serious, every effort shall be made to contact the parent(s) or legal guardian(s) and/or family physician immediately. *** Any injuries or accidents to pupils shall be reported as soon as possible to the Superintendent."

No. 8481 (CARE OF INJURED AND ILL PERSONS): "The injury or illness [of a student] shall be reported immediately to the school nurse ...."

No. 8462 (REPORTING POTENTIALLY MISSING OR ABUSED CHILDREN): "Employees, volunteers, or interns working in the school district shall immediately notify designated child welfare authorities of incidents of alleged missing, abused, and/or neglected children. Reports of incidents of alleged missing, abused, or neglected children shall be reported to the New Jersey State Central Registry (SCR) at 1-877 NJ ABUSE. If the child is in immediate danger a call shall be placed to 911 as well as to the SCR. *** The Building Principal or designee upon being notified by a person having reason to believe that a child may be missing or may have been

---

[1]       N.J.S.A. § 9:6-8.9 ("'Abused child' means a child under the age of 18 years whose parent, guardian, or other person having his custody and control: a. Inflicts or allows to be inflicted upon such child physical injury by other than accidental means which causes or creates a substantial risk of ... protracted impairment of ... emotional health ...."); § 9:6-8.10 ("Any person having reasonable cause to believe that a child has been subjected to child abuse or acts of child abuse shall report the same immediately to the Division of Youth and Family Services by telephone or otherwise.").

abused or neglected, must notify appropriate law enforcement authorities of incidents of potentially missing, abused, or neglected child situations. *** The Superintendent and/or designee shall provide training to school district employees, volunteers, and/or interns on the district's policy and procedures for reporting allegations of missing, abused, or neglected child situations. All new school district employees, volunteers, and/or interns shall receive the required information and training as part of their orientation. *** The Building Principal or designee upon being notified by a person having reason to believe that a child may be missing or may have been abused or neglected, must notify appropriate law enforcement authorities of incidents of potentially missing, abused, or neglected child situations."

No. 8468 (CRISIS RESPONSE): "The Board of Education recognizes its responsibility to be prepared to confront circumstances in which the physical and/or mental well-being of pupils, staff and other individuals on school grounds is threatened or overtly impacted upon by an individual or group of individuals. Situations at issue include, but are not limited to, acts of terrorism, hostage situations and other threats or acts of a violent nature. The Board further recognizes there is a need to deal with the aftermath of such events and circumstances, and to contend with the psychological trauma, pain and confusion which may ensue as the result of these events. *** In the event of an overt threat to an individual: 1. Anyone becoming aware of such a threat shall, without delay, report the nature of this threat, and any details known about the threat to the Building Principal or their immediate supervisor. 2. The administrator/supervisor, upon receipt of such a report, shall isolate and contain the individual(s) reported to have made said threat. ***During the commission of ... violence, the jurisdiction of the local/State Police authority is recognized. 1. Aware that such an act is in progress, the administrator shall, without delay, notify the local, State or county law enforcement authorities. 2. The school shall place at the disposal of the law enforcement authorities, all personnel and information that might be supportive and useful in resolving the crisis. *** The Superintendent or his/her designee, shall act as the primary disseminator of information to the press, public and staff concerning the ongoing crisis. *** Consideration shall be given to the possible effects the release of information might have on: ... The reactions or interpretation of the staff, pupils or community .... "

84.     The above-described misconduct, abuse, corporal punishment and omissions of the Defendants proximately caused the following injuries to the Minor Plaintiffs: (a) pain caused by being bound and restrained by tape; (b) severe emotional distress evidenced by post-traumatic stress disorder, heightened anxiety and fear; (c) lack of sleep and inability to sleep normally; and (d) decreased self-esteem, and depression.

15

85.   At the time of the above-described abuse by the Custodians, there was a high likelihood that serious harm would arise from the Custodians' conduct.

86.   At the time of the above-described abuse by the Custodians, the Custodians were aware, or recklessly disregarded the likelihood, that serious harm would arise from their conduct.

87.   Upon information and belief, at the time the Custodians learned that their above-described abuse would cause serious harm, they had no remorse and expressed that their conduct was simply a harmless joke, denied that such conduct even occurred and blamed the Minor Plaintiffs for causing this incident.

88.   Upon information and belief, shortly after the Custodians committed the above-described abuse, they attempted to conceal their conduct by concealing and/or destroying the pictures that they took of the Minor Plaintiffs during the abuse.

89.   Under New Jersey law, this is an exceptional case where punitive damages should be awarded.

**AS AND FOR A FIRST CLAIM**
**VIOLATION OF MINOR PLAINTIFFS' CIVIL RIGHTS**
<u>(Pursuant to 42 U.S.C. § 1983 against All Defendants)</u>

90.    Plaintiffs repeat and reallege the Paragraphs above as if fully set forth herein.

91.    As demonstrated above, the Custodians and the Municipal Defendants deprived the Minor Plaintiffs of their rights secured by the United States Constitution.

92.    As detailed above, the Custodians and the Municipal Defendants violated the Minor Plaintiffs' Fourteenth Amendment right (and such right under the New Jersey Constitution) to be free from physical and emotional abuse by a public school employee.  Such Defendants violated the Minor Plaintiffs' bodily integrity by tying them up and gaging them with tape.

93.    As demonstrated above, the conduct and omissions of the Custodians and the Municipal Defendants were committed by persons acting under the color of state law in that they are public school employees, namely custodians for TGS and the other Municipal Defendants.

94.    As described above, such abuse and corporal punishment was inspired by malice and sadism of the Custodians as there can be no reasonable explanation for the Custodians to commit these acts and then take pictures of it.

95.    Here, there was no need for the application of force or any physical contact whatsoever, the Custodians' abuse inflicted severe emotional injuries upon the Minor Plaintiffs, and the force applied was not applied in a good faith effort to maintain or restore discipline, but was done maliciously and sadistically for the very purpose of causing harm.

96.    The force applied caused injury so severe, was so disproportionate to the need presented (as there was no need presented), and was so inspired by malice or sadism rather than a

merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the contemporary conscience.

97.   There was no pedagogical justification for the use of force.

98.   The force utilized was clearly excessive to meet any legitimate school or pedagogical objective.

99.   The Custodians personally abused the Minor Plaintiffs, personally directed such abuse or had actual knowledge and acquiesced in such abuse.

100.   Such abuse was arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning.

101.   As demonstrated above, the Municipal Defendants violated the Minor Plaintiffs' constitutional rights by acting pursuant to their official municipal policy and custom.

102.   The Municipal Defendants had a permanent and well-settled policy of allowing students to use bathrooms while custodians performed repair and maintenance work therein.

103.   The Municipal Defendants had a permanent and well-settled policy of allowing employees to take pictures of students with cell phones.

104.   The Municipal Defendants had a custom or policy not to adequately train or supervise its employees with regard to the taking of cell phone pictures of students.

105.   The Municipal Defendants had a custom or policy not to adequately train or supervise its custodians with regard to interacting with students, and interacting with students in bathrooms.

106.   The  policies and customs of the Municipal Defendants promoted the use of taking pictures of the students with cell phones.

107.   As demonstrated above, the Municipal Defendants are guilty of a systematic failure to supervise and train their employees to such a degree that it amounts to a policy or custom of deliberate indifference to constitutional violations of their students.

108.   Upon information and belief, employees of the Municipal Defendants committed similar violations of federal rights, and the Municipal Defendants failed to institute policies to deal with recurring situations that presented an obvious potential for that type of violation.  This information and belief is supported by the fact that the Municipal Defendants maintained the above-described policies and practices that promoted such incidents.

109.   In sum, the Municipal Defendants disregarded a known or obvious consequence of their actions.

110.   As demonstrated above:

    A.   The harm suffered by the Minor Plaintiffs was  foreseeable and directly linked to the Municipal Defendants' above-described acts, omissions, policies, and customs of deliberate indifference to the constitutional violations of their students;

    B.   The physical and emotional abuse described above shocks the contemporary conscience;

    C.   A relationship existed between the Municipal Defendants and the Minor Plaintiffs such that the Minor Plaintiffs were foreseeable victims of the Municipal Defendants' above-described acts, omissions, policies, and customs of deliberate indifference to the constitutional violations of their students; and

> D.   The Defendants affirmatively used their authority in a way that created a danger to the Minor Plaintiffs, and in a way that rendered the Minor Plaintiffs more vulnerable to danger than had the Defendants not acted at all.

111.   The above-described misconduct, abuse, corporal punishment and omissions of the Defendants proximately caused the following injuries to the Minor Plaintiffs: (a) pain caused by being restrained by tape; (b) severe emotional distress evidenced by post-traumatic stress disorder, heightened anxiety and fear; (c) lack of sleep and inability to sleep normally; and (d) decreased self-esteem, and depression.

112.   Plaintiffs should be awarded compensatory damages against Defendants in an amount to be determined at trial, but no less than $30,000,000.

113.   Punitive Damages in an amount to be determined at trial should be awarded against the Custodians because their misconduct described above was motivated by evil motive or intent, or it involved reckless or callous indifference to the federally protected rights of the Minor Plaintiffs.

114.   The Court should award Plaintiffs reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

## AS AND FOR A SECOND CLAIM
## VIOLATION OF MINOR PLAINTIFFS' CIVIL RIGHTS
### (Pursuant to New Jersey Civil Rights Act Against All Defendants)

115.   Plaintiffs repeat and reallege the Paragraphs above as if fully set forth herein.

116.   Based upon the foregoing, the Defendants violated New Jersey Civil Rights Act (NJCRA), N.J.S.A. §10:6-1, *et seq.*

117.   The above-described misconduct, abuse, corporal punishment and omissions by the Defendants proximately caused the following injuries to the Minor Plaintiffs: (a) pain caused by

20

being restrained by tape; (b) severe emotional distress evidenced by post-traumatic stress disorder, heightened anxiety and fear; (c) lack of sleep and inability to sleep normally; and (d) decreased self-esteem, and depression.

118.    Plaintiffs should be awarded compensatory damages against Defendants in an amount to be determined at trial, but no less than $30,000,000.

119.    The Court should award Plaintiffs reasonable attorneys' fees and costs under N. J. S.A. § 10:6-2(f).

## AS AND FOR A THIRD CLAIM
## BATTERY
## (Against All Defendants)

120.    Plaintiffs repeat and reallege the Paragraphs above as if fully set forth herein.

121.    Based upon the foregoing, the Custodians intended to cause a harmful and offensive contact with the Minor Plaintiffs with nonconsensual touching.

122.    The above-described misconduct, abuse, corporal punishment and omissions by the Defendants proximately caused the following injuries to the Minor Plaintiffs: (a) pain caused by being restrained by tape; (b) severe emotional distress evidenced by post-traumatic distress disorder, heightened anxiety and fear; (c) lack of sleep and inability to sleep normally; and (d) decreased self-esteem, and depression.

123.    The Custodians committed the above-described harmful conduct as employees of the Municipal Defendants and within the scope of their employment with the Municipal Defendants.

124.    The Municipal Defendants have taken the position that the above-described conduct of the Custodians was not criminal and did not involve actual malice or willful misconduct.

125.   Plaintiffs should be awarded compensatory damages against Defendants in an amount to be determined at trial, but no less than $30,000,000.

126.   Punitive Damages in an amount to be determined at trial should be awarded against the Custodians.

<div align="center">

**AS AND FOR A FOURTH CLAIM**
**ASSAULT**
**(Against All Defendants)**

</div>

127.   Plaintiffs repeat and reallege the Paragraphs above as if fully set forth herein.

128.   Based upon the foregoing, the Custodians caused the Minor Plaintiffs to have an imminent apprehension of such a contact, and the Minor Plaintiffs were thereby put in such imminent apprehension.

129.   The above-described misconduct, abuse, corporal punishment and omissions by the Defendants proximately caused the following injuries to the Minor Plaintiffs: (a) pain caused by being restrained by tape; (b) severe emotional distress evidenced by post-traumatic stress disorder, heightened anxiety and fear; (c) lack of sleep and inability to sleep normally; and (d) decreased self-esteem, and depression.

130.   The Custodians committed the above-described harmful conduct as employees of the Municipal Defendants and within the scope of their employment with the Municipal Defendants.

131.   The Municipal Defendants have taken the position that the above-described conduct of the Custodians was not criminal and did not involve actual malice or willful misconduct.

132.   Plaintiffs should be awarded compensatory damages against Defendants in an amount to be determined at trial, but no less than $30,000,000.

133.    Punitive Damages in an amount to be determined at trial should be awarded against the Custodians.

## AS AND FOR A FIFTH CLAIM
## FALSE IMPRISONMENT
## (Against All Defendants)

134.    Plaintiffs repeat and reallege the Paragraphs above as if fully set forth herein.

135.    Based upon the foregoing, the Custodians caused the Minor Plaintiffs to be constrained without legal justification by way of detaining the Minor Plaintiffs against their will, and without proper legal authority or legal justification.

136.    The above-described misconduct, abuse, corporal punishment and omissions of the Defendants proximately caused the following injuries to the Minor Plaintiffs: (a) pain caused by being restrained by tape; (b) severe emotional distress evidenced by post-traumatic stress disorder, heightened anxiety and fear; (c) lack of sleep and inability to sleep normally; and (d) decreased self-esteem, and depression.

137.    The Custodians committed the above-described harmful conduct as employees of the Municipal Defendants and within the scope of their employment with the Municipal Defendants.

138.    The Municipal Defendants have taken the position that the above-described conduct of the Custodians was not criminal and did not involve actual malice or willful misconduct.

139.    Plaintiffs should be awarded compensatory damages against Defendants in an amount to be determined at trial, but no less than $30,000,000.

140.    Punitive Damages in an amount to be determined at trial should be awarded against the Custodians.

## AS AND FOR A SIXTH CLAIM
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants)

141.   Plaintiffs repeat and reallege the Paragraphs above as if fully set forth herein.

142.   Based upon the foregoing, the Custodians intended to cause emotional distress to the Minor Plaintiffs through the above-described extreme and outrageous conduct.

143.   The above-described misconduct, abuse, corporal punishment and omissions by the Defendants proximately caused the following injuries to the Minor Plaintiffs: (a) pain caused by being restrained by tape; (b) severe emotional distress evidenced by post-traumatic stress disorder, heightened anxiety and fear; (c) lack of sleep and inability to sleep normally; and (d) decreased self-esteem, and depression.

144.   The Custodians committed the above-described harmful conduct as employees of the Municipal Defendants and within the scope of their employment with the Municipal Defendants.

145.   The Municipal Defendants have taken the position that the above-described conduct of the Custodians was not criminal and did not involve actual malice or willful misconduct.

146.   Plaintiffs should be awarded compensatory damages against Defendants in an amount to be determined at trial, but no less than $30,000,000.

147.   Punitive Damages in an amount to be determined at trial should be awarded against the Custodians.

24

## AS AND FOR A SEVENTH CLAIM
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants)

148.    Plaintiffs repeat and reallege the Paragraphs above as if fully set forth herein.

149.    Based upon the foregoing, and to the extent that the Custodians' above-described conduct was not intentional, but merely negligent, such conduct placed the Minor Plaintiffs in reasonable fear of immediate personal injury, which gave rise to emotional distress that resulted in a substantial bodily injury or sickness.

150.    The above-described misconduct, abuse, corporal punishment and omissions by the Defendants proximately caused the following injuries to the Minor Plaintiffs: (a) pain caused by being restrained by tape; (b) severe emotional distress evidenced by post-traumatic stress disorder, heightened anxiety and fear; (c) lack of sleep and inability to sleep normally; and (d) decreased self-esteem, and depression.

151.    The Custodians committed the above-described harmful conduct as employees of the Municipal Defendants and within the scope of their employment with the Municipal Defendants.

152.    The Municipal Defendants have taken the position that the above-described conduct of the Custodians was not criminal and did not involve actual malice or willful misconduct.

153.    Plaintiffs should be awarded compensatory damages against Defendants in an amount to be determined at trial, but no less than $30,000,000.

**WHEREFORE**, Plaintiffs demand judgment as follows:

A.   Plaintiffs' actual damages as proven at trial.

B.   Punitive damages as permitted by law.

C.   Reasonable attorney's fees.

D.   The costs and disbursements of this action.

E.   Prejudgment interest.

F.   Such other and further relief as deemed just and proper by this Court.

Dated: February 28, 2013

<div style="margin-left: 40%;">

Yours, etc.,
TACOPINA, SEIGEL & TURANO, P.C.

By:   _Chad D Seigel_

Chad Seigel, Esq. (CS-5340)
60 Park Place
Suite 703-704
Newark, N.J. 07102
(212) 227-8877

</div>